## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| OKEELANTA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 9:21-cv-81505-DMM |
| | ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS, | ) ) ) | |
| | ) | |
| Defendant. | ) ) / | |
| | | |
| UNITED STATES SUGAR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 9:21-cv-81506-DMM |
| | ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) ) / | |
| | | |
| SUGAR CANE GROWERS COOPERATIVE OF FLORIDA, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 9:21-cv-81508-DMM |
| | ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS, | ) ) ) | |
| | ) | |
| Defendant. | ) ) / | |

**PLAINTIFF OKEELANTA CORPORATION'S RESPONSE IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER BY THE U.S. ARMY CORPS OF ENGINEERS (D.E. 21)**

Plaintiff Okeelanta Corporation ("Okeelanta") opposes the U.S. Army Corps of Engineers ("Army Corps") Motion for Protective Order (D.E. 21). Okeelanta served targeted discovery requests that ask the Army Corps to state whether it took three actions required by law that are relevant to the issues in this case, and to provide copies of specific public records related to those actions. The discovery requests are intended to allow Okeelanta to refine the legal claims in its complaint as necessary, and to prepare for substantive briefing. The requests are consistent with judicial review based on an administrative record, and are reasonable in their timing and scope. Okeelanta respectfully requests that the Court deny the Army Corps' Motion for Protective Order, order the agency to disclose whether it took those required actions, and direct it to produce the requested documents now or alternatively include them in the administrative record.

**I.   OKEELANTA'S DISCOVERY REQUESTS ARE NARROWLY TAILORED TO OBTAIN IMPORTANT INFORMATION IN THIS CASE**

This case is about the Army Corps' failure to ensure that operation of the Everglades Agricultural Area Reservoir and its associated Stormwater Treatment Area (collectively, the "EAA Reservoir") will protect agricultural water supply as required by the Water Resources Development Act of 2000 ("WRDA 2000") Savings Clause. Pub. L. No. 106-541, § 601(h)(5)(A)(1), 104 Stat. 2680 (Dec. 11, 2000).

The Army Corps issued Programmatic Regulations that implement WRDA 2000 and establish procedures for ensuring compliance with the Savings Clause. 33 CFR Part 385. Those regulations require the Army Corps to take certain actions related to operation of the Central and Southern Florida Project ("C&SF Project") which are relevant to the issues in the case. Okeelanta's discovery requests seek to learn whether or not the agency took those actions.

Okeelanta served interrogatories and requests for production.  The interrogatories ask three questions:  whether the Army Corps ever issued (1) the Pre-CERP Baseline, (2) the System Operating Manual, and (3) the Guidance Memoranda, each of which was required by the Programmatic Regulations.  The requests for production ask the agency to provide documents related to those actions that the agency was required to prepare or receive, specifically:  copies of the final documents (if they were ever issued), the records of decision approving the documents, public notices and comments received about drafts of the documents, the draft documents that were issued for public review, and notices of concurrence or non-concurrence by other agencies that were required by the Programmatic Regulations.  Okeelanta did not ask for internal memoranda, email, or any other preparatory materials related to those three required actions.

The information sought in these discovery requests is narrowly tailored and highly relevant to the issues in the case:

**Pre-CERP Baseline.**  The Programmatic Regulations provide that the Army Corps must determine compliance with the WRDA 2000 Savings Clause by comparing the availability of water supply with a project such as the EAA Reservoir with the Pre-CERP Baseline.  33 CFR § 385.36(a).  The "Pre-CERP Baseline" is defined as the hydrological conditions that existed in December 2000 when WRDA 2000 was enacted.  33 CFR § 385.3.  The Programmatic Regulations require the Army Corps to develop the Pre-CERP Baseline for approval by the Secretary of the Army by June 14, 2004.  33 CFR § 385.35(a). In its discovery requests, Okeelanta asked the agency to state whether it ever issued an approved Pre-CERP Baseline, and to provide the key documents related to it, so that it will be able to determine whether the agency engaged in the required comparison when it approved the EAA Reservoir.

3

**System Operating Manual.** The Programmatic Regulations also require the Army Corps to issue a System Operating Manual that describes how existing and future features of the C&SF Project are operated. 33 CFR § 385.28(a). Operation of C&SF Project features affects the availability of water for legal water users, and the Programmatic Regulations require that the manual be consistent with the Savings Clause. 33 CFR § 385.28(a)(6). The Programmatic Regulations required the Army Corps to issue the System Operating Manual by December 31, 2005. 33 CFR § 385.28(b)(1). Okeelanta asked the agency if it ever issued the System Operating Manual, and to provide key documents related to it, so that it will be able to determine what operational assumptions the agency made regarding existing and planned C&SF Project features.

**Guidance Memoranda.** The Programmatic Regulations provide that the Army Corps must issue Guidance Memoranda related to implementation of the regulations. 33 CFR § 385.5. The Guidance Memoranda are not part of the regulations themselves, but instead are intended to provide technical and internal guidance to agency personnel. Final Rule, Programmatic Regulations for the Comprehensive Everglades Restoration Plan ("CERP"), 68 Fed. Reg. 64200, 64203 (Nov. 12, 2003). In its Savings Clause analysis for the EAA Reservoir, the Army Corps cited to a draft version of a Guidance Memorandum as justification for ignoring the requirements of the Programmatic Regulations related to the Pre-CERP Baseline. Okeelanta's discovery asks the agency to indicate whether it ever issued final Guidance Memoranda, and to provide copies of such memoranda and certain related documents.

Okeelanta has been unable to identify or obtain through online sources any final, approved Pre-CERP Baseline, System Operating Manual, or Guidance Memoranda. On information and belief, Okeelanta now believes that the agency never finalized these documents,

despite the requirements of the Programmatic Regulations. Since these documents are directly relevant to whether the Army Corps complied with the WRDA 2000 Savings Clause, and are part of the legal framework for Savings Clause determinations, Okeelanta made the discovery requests so that the agency can say whether or not it issued these documents, and if so, provide Okeelanta with copies.

The Army Corps is refusing to even say whether or not it actually issued these documents. As noted in the Motion for Protective Order, Okeelanta's counsel offered different compromises related to providing the documents if the agency would just state whether or not it issued the Pre-CERP Baseline, System Operating Manual, and final Guidance Memoranda. *See* Motion, at 8-10. Given that the Army Corps is a federal agency, it was required to issue these documents by its own regulations, and because these clearly should be publicly-available records, Okeelanta's request should have be easy to satisfy. However, the agency's silence in the face of these proposed compromises is telling. The agency's refusal to even respond suggests that the Army Corps does not want to admit that it never issued these documents, and demonstrates why discovery requests were necessary in the first place.

**II.    THE DISCOVERY REQUESTS ARE CONSISTENT WITH ADMINISTRATIVE PROCEDURE ACT REVIEW**

Nothing in Okeelanta's discovery requests is inconsistent with the Administrative Procedure Act ("APA"). Okeelanta agrees that the focal point of judicial review in an APA case is the administrative record. *See, e.g., Preserve Endangered Areas of Cobb's History, Inc. ("PEACH") v. U.S. Army Corps of Engineers,* 87 F.3d 1242, 1246 (11th Cir. 1996). The administrative record consists of documents before the agency at the time it made the challenged decision. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420 (1971). "The 'whole' administrative record … consists of all documents and materials directly or indirectly considered

5

by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dept. of Labor,* 885 F.2d 551, 555 (9th Cir. 1989) (citations and emphasis omitted).  In an APA case, the Court reviews the administrative record and determines whether the agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

The documents requested by Okeelanta all should be part of the administrative record in this case.  The Court needs to review the administrative record to determine whether the agency applied the correct legal standard in determining compliance with the WRDA 2000 Savings Clause.  The process for applying the Savings Clause is spelled out in the Programmatic Regulations.  Okeelanta's complaint specifically references the Pre-CERP Baseline and System Operating Manual.  *See* D.E. 1, ¶¶ 20-21, 42.  Those documents have legal significance as they relate to the proper application of the Savings Clause, therefore they necessarily must be part of the administrative record.

Okeelanta's interrogatories are intended to clarify likely gaps in the administrative record.  If the Army Corps never issued the final, approved Pre-CERP Baseline, System Operating Manual or Guidance Memoranda, then those documents will not be in the administrative record because they do not exist.  If the agency provides the record without any explanation, Okeelanta will be left to wonder whether the absence of those documents means that they do not exist, or that agency personnel simply failed to include them.  The interrogatories therefore would have the effect of clarifying the contents of the administrative record, which will be useful when the parties brief the merits. *Florida Wildlife Fed'n v. U.S. Army Corps of Engineers,* 401 F.Supp. 3d 1298, 1307 (S.D. Fla. 2005) (Middlebrooks, J.) ("A

6

court … 'may consider additional evidence if it explains the record or if it addresses whether all relevant factors were considered.'") (citations omitted).

The Army Corps cites no statute or rule saying that in an APA case a party cannot seek any discovery at all, or that the Federal Rules of Civil Procedure do not apply.  The cases cited by the agency all involved protective orders against discovery <u>outside of the administrative record</u>.  *See* Motion at 3-6; *PEACH v. U.S. Army Corps of Engineers*, 915 F.Supp. 378, 383-84 (N.D. Ga. 1995) (entering protective order against discovery of "extraneous materials" to the administrative record); *Alabama-Tombigbee Rivers Coal. v. Kempthorne,* 477 F.3d 1250, 1262 (11th Cir. 2007) (discovery of material "beyond the administrative record" disallowed because plaintiffs failed to make a "strong showing of bad faith or improper behavior"); *Marllantas, Inc. v. Rodriguez,* 806 F. App'x 865, 866 (11th Cir. 2020) (discovery "beyond the CAR [administrative record]" amounted to "inquiry into executive motivation," and plaintiff had not made strong showing of bad faith).  Those cases are clearly distinguishable, because Okeelanta seeks information and documents that should be in the administrative record.  These cases also are distinguishable because Okeelanta is not just seeking factual information, but is asking about actions of the Army Corps that are part of the legal framework in deciding the case.

In addition, it is reasonable for Okeelanta to seek these documents now even if they are included in the administrative record later, so that counsel can prepare their case.  There is no rule, and the Army Corps cites no authority, that the APA allows an agency to hide the facts and key agency determinations until the last minute so that plaintiffs' counsel has limited time to prepare for merits briefing.  Even if there is a dispute later about whether the sought-after information should be in the record, that does not mean that plaintiffs' counsel should not be able to learn the information as it prepares for merits briefing.

### III. THE TIMING AND SCOPE OF OKEELANTA'S DISCOVERY REQUESTS ARE REASONABLE

There is nothing unreasonable about the timing of Okeelanta's discovery requests. The requests were issued in November so that Okeelanta would have the information before the agency files its Motion to Dismiss in early January. The agency has indicated that it will be providing the "first installment" of the administrative record along with that motion, *see* D.E. 18, at 3, and the timing of these requests gives the agency the opportunity to include some of the responsive documents in that first installment. Okeelanta also sought the information before the agency responds to the complaint in early January, so that the company would have the option to amend its complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Finally, Okeelanta issued the discovery requests early in the case so that potential issues regarding the inclusion of these documents in the administrative record could be resolved without delaying the timing of the summary judgment motions. The insinuations in the Army Corps' Motion that Okeelanta timed its discovery requests near Thanksgiving and Christmas for an improper purpose are baseless, and are belied by Okeelanta's offers to compromise.

The scope of Okeelanta's discovery requests is limited and reasonable. The interrogatories consist of three simple questions that ask whether the agency took certain actions. A federal agency should not be reluctant to answer questions about whether it took actions required by its own regulations. The requests for production did not seek every document or email related to those actions. Instead, the requests for production seek documents that the Army Corps had to prepare pursuant to law, and are based on the specific requirements found in the Programmatic Regulations for issuance of the Pre-CERP Baseline, System Operating Manual, and Guidance Memoranda. *See* 33 CFR § 385.5 (procedures for issuance of Guidance

Memoranda), 385.28 (procedures for issuance of System Operating Manual), 385.36 (procedures for issuance of Pre-CERP Baseline).

Okeelanta requested "drafts" of those documents because it is evident that the Army Corps issued at least some draft versions in order to seek public comment (which is required by the Programmatic Regulations), and in fact Okeelanta has found on the internet a draft Pre-CERP Baseline and draft Guidance Memoranda.  *See, e.g.,* Notice of Availability, Guidance Memoranda for CERP, 70 Fed. Reg. 24008 (May 6, 2005) (inviting public "review and comment on the final draft of the guidance memoranda").  The Army Corps' assertion that all drafts are inherently protected by the deliberative process privilege is patently false, and if there are such internal versions, the agency can withhold them with a privilege log.

The Army Corps' accusations that Okeelanta is otherwise acting improperly lack any substance.  Okeelanta never made an "agreement" to not seek discovery (as suggested on page 3 and note 4 of the agency's Motion), and the agency's citation to the Joint Litigation Plan undercuts its own assertions to that effect.

Asking the agency to provide documents required by law and referenced in the Okeelanta's complaint is not some improper effort to "dictate the contents of the [administrative] record" as suggested on page 6 of the agency's Motion.  The agency misconceives the nature of the administrative record.  An administrative record is a body of documents defined by law, and although the agency must compile it, the record is not just whatever the agency says it is.  "An agency may not unilaterally determine what constitutes the administrative record." *Bar MK Ranches v. Yeutter,* 994 F.2d 735, 739-40 (10th Cir. 1993).  The agency has an obligation to compile a balanced record that includes all material documents considered directly or indirectly, whether they are helpful or hurtful to the agency's case.  *See, e.g., Thompson,* 885 F.2d at 555.

9

In this case, Army Corps counsel actually invited Plaintiffs to work with them to "focus" the administrative record in this case, *see* D.E. 18, at 3-4, and it is ironic that the agency is now crying foul when Okeelanta formally asked the agency to provide specific documents referenced in its complaint.

Finally, Okeelanta has been entirely reasonable in its response to the Army Corps' objections to these discovery requests. In an effort to resolve the dispute without the need for Court intervention, Okeelanta offered to allow the agency to include the responsive documents in the installments of the administrative record; it offered to withdraw the discovery requests completely if the agency would simply indicate whether it took the required actions and would agree to include key documents in the administrative record; and Okeelanta's counsel offered to schedule a telephone call among counsel to discuss other potential compromises. *See* Motion, at 8-10. In response, the Army Corps simply stonewalled. Agency counsel never responded to the offer to talk on the phone, never revealed whether the agency took the required actions, and never said whether or not the agency would include the documents in the administrative record. Instead, the Agency abandoned the meet and confer efforts and filed its Motion. Okeelanta is not the party being unreasonable.

## IV. CONCLUSION

Okeelanta respectfully requests that the Court deny the Army Corps' Motion for Protective Order. The agency should be ordered to respond to the interrogatories forthwith, and either provide the requested documents now or include them in the administrative record.

Dated:  January 3, 2022

Respectfully submitted,

/s/ *Charles Throckmorton*
T. Neal McAliley
Florida Bar No. 172091
nmcaliley@carltonfields.com
Charles Throckmorton
Florida Bar No. 101203
cthrockmorton@carltonfields.com
CARLTON FIELDS, P.A.
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, Florida 33136
Tel: (305) 530-0050
Fax: (305) 530-0055

*Attorneys for Okeelanta Corporation*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 3, 2022, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system and served via email on all counsel or parties of record on the Service List below.

/s/ *Charles Throckmorton*
Charles Throckmorton

## **SERVICE LIST**

**MATTHEW J. FEELEY**
Office of the United States Attorney
Southern District of Florida
99 N.E. 4th Street, Suite 300
Miami, FL 33132-2111
Email: Matthew.Feeley@usdoj.gov
Tel: 305.961.9235; Fax: 305.530.7139

**PETER KRYN DYKEMA**
U.S. Department of Justice
Environment and Natural Resources Division
4 Constitution Square
150 M Street, N.E., Suite 3.206
Washington, DC 20002
(202) 305-0436
Email: peter.dykema@usdoj.gov

**SALLY J. SULLIVAN**
U.S. Department of Justice
Environment and Natural Resources Division
150 M Street NE Suite 3.142
Washington, DC 20002
(202) 514-9269
Email: sally.sullivan@usdoj.gov

*Counsel for Federal Defendants*